[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 10372
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The defendant and plaintiff, whose maiden name was Bartley, intermarried at Jewett City, Connecticut on September 13, 1997; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that no state agency is presently contributing to the care or welfare of either party.
Plaintiff testified that the parties started having problems in December 1998; that on December 17, 1998 the defendant assaulted the plaintiff while in her car; that he grabbed her around the neck, pulled her hair and punched her in the arms, all of which caused her to go to the hospital. Plaintiff underwent psychiatric therapy and obtained a restraining order against the defendant which caused him to vacate the premises for approximately ten days and not to have any contact with her.
After a hearing on the restraining order, it was discontinued and the defendant returned to the marital home which plaintiff had vacated.
The defendant did not offer any evidence as to why the marriage broke down. However, he claims that when he returned to the marital residence much of his personal property in the home had been either taken by the plaintiff or damaged by her. He provided the court with a list of said items, some of which he claimed he owned prior to the marriage, and some of which were jointly owned. See Defendant's Exhibit 1. He claims the value of said items was $70,000.00.
The plaintiff denies taking said items or damaging any of them. Further she claims that her personal property which she brought into the home was missing and that the value of said personalty was $125,000.00. See Plaintiff's Exhibit B The plaintiff removed the items listed in Plaintiff's Exhibit A. CT Page 10373
The court finds the claims of each party not credible as to the disposition of their personal property nor as to the values placed thereon. Accordingly no order is made concerning said items except that the plaintiff shall be entitled to receive from Ann Pottie, an intimate friend of the defendant, her personalty in the possession of Ann Pottie. To this end the defendant is ordered to cooperate. Plaintiff shall obtain her said property within ten days of this judgment.
It is obvious from the testimony of the parties that the marriage has broken down irretrievably with no hope for reconciliation. I find the defendant more at fault for the breakdown of the marriage of the parties.
The parties purchased a 44-foot Beneteau sailboat named Mas Alla on October 2, 1998 for $115,000.00 with a down payment of $11,000.00, $8,000.00 of which plaintiff paid. In addition there were add-ons costing $15,000.00. Defendant's Exhibit 6. The title to said boat is in the plaintiff's name, since, according to the defendant, title could not be put in his name as he is a Canadian citizen.
The parties obtained and signed a loan on the sailboat from the Essex Credit Corporation in the sum of $104,000.00 with interest at 7.99%. The loan is payable over 15 years in monthly payment of $993.28. Defendant's Exhibit 6.
The defendant has been making the payments on the loan. The plaintiff claims he is at least one month in default. However, the plaintiff has not received written notice of any default on the loan from Essex Credit Corporation. The defendant has been living on the boat and operates his business as a freelance graphic artist from the boat. The defendant also pays all expenses of ownership of the boat.
It appears both parties have the necessary papers to operate the boat for recreational and/or charter purposes. Each one wants to own the boat.
The plaintiff's mother, Shirley Bartley, is willing to advance the necessary funds to pay off the loan on the boat and reimburse the defendant for loan payments he made and his down payment if title to the boat remains with the plaintiff
The defendant's ex wife, Angelica Witt, is willing to advance the necessary funds to pay the loan on the boat and the plaintiff's contribution to the down payment in exchange for title and ownership to said boat. She claims she will then rent it to the defendant. However, there is no statutory authority permitting the court to transfer CT Page 10374 ownership of said sailboat to her.
Each party has a different opinion as to the value of the boat. Plaintiff claims it is worth $160,000.00. The defendant claims it has a value of $95,000.00 with the loan balance of $98,000.00 more or less. Neither party provided the court with an independent appraisal of the market value of said boat.
While the defendant was out of the home due to the restraining order, the plaintiff charged to the defendant's American Express Card items totaling $18,921.99. She purchased items such as furniture, although she couldn't be specific as to what kind of furniture, an expensive laptop computer for her business, airplane tickets to travel with in search of employment, which she did not use, and other miscellaneous items. See Defendant's Exhibit 2. She claims she needed these items to live as defendant never gave her any money once they separated. The defendant seeks contribution from the plaintiff towards payment of the above. He claims all such charges were made without his approval.
During the marriage the defendant became the sole owner of Rostergraph, Inc. which made wallpaper designs. The plaintiff was employed in said company. However the company went out of business in October 1999. The defendant declared personal bankruptcy (Plaintiff's Exhibit E) and the plaintiff became unemployed. While the business flourished the parties enjoyed a pleasant and expensive lifestyle.
After the business terminated plaintiff opened her own business known as Concept Design Services. The defendant eventually went to Puerto Rico in November 1999 where as stated previously, he lives on the boat and conducts a business as a freelance graphic artist.
According to their financial affidavits, plaintiff has an estimated weekly income of $200.00 and the defendant a weekly income of $300.00. The expenses of paying the loan on the boat and the expenses of maintaining it greatly exceeds the defendant's weekly income.
The plaintiff, who was born May 23, 1955, has a high school and college education. For the past five years, plaintiff has been seeing a psychiatrist and has been hospitalized three times. Except for her psychiatric problems, plaintiff appears to be in good physical health. Presently the plaintiff is living with Michael Nedila whom she met in May 1999 after the parties separated.
The plaintiff had been married before her marriage to the defendant. She acquired real estate during her first marriage which she sold and received $20,000.00 from the sale. By agreement of the parties $15,000.00 CT Page 10375 of said proceeds are held by Attorney Frank Manfredi pending the outcome of this matter. The defendant has no interest in said home as it was not marital property.
The defendant appears to be in good health. He became involved with Ann Pottie during 1999 after the parties separated. He admits that she has some of plaintiff's personal property as he gave them to her. Ann Pottie claims that all she has of plaintiff's property are two pieces which the plaintiff can recover at any time.
The distribution of the remaining assets of the parties will be set forth in the following orders.
After considering all of the factors in Connecticut General Statutes §§ 46b-62, 81 and 82 and the evidence, judgment is entered dissolving the marriage of the parties on the ground of irretrievable breakdown.
Based on what is fair, equitable and just for the parties, it is ordered that:
1. Plaintiff's maiden name, Bartley, is returned to her.
2. No alimony is awarded to either party.
3. The $15,000.00, with any accrued interest, held by Attorney Frank Manfredi shall be given to the plaintiff free of any claims by the defendant.
4. The defendant shall be solely responsible for the American Express Credit Card debt set forth in Defendant's Exhibit 2.
5. The defendant shall arrange for the plaintiff to recover from Ann Pottie all items of plaintiff's personalty in her possession immediately upon written demand by the plaintiff to her which demand shall be within 30 days, otherwise plaintiff shall be deemed to have abandoned such items.
6. The plaintiff shall be entitled to receive all her personal property presently located in the defendant's real estate located at 368 Roode Road, Jewett City.
7. The plaintiff shall retain, free of any claim by the defendant, her real estate located in Windham, Connecticut.
8. The plaintiff shall retain sole ownership of the Chrysler LeBaron, the BMW and the Toyota Camry. The plaintiff shall pay all loans and liens CT Page 10376 on said automobiles and hold the defendant harmless thereon.
9. The MFS Service Center, Inc. listed on plaintiff's financial affidavit as well as the personalty listed therein, except the 44.5 ft. Beneteau sailboat, shall be the property of the plaintiff free of any claim by the defendant.
10. The plaintiff shall transfer ownership of the 44.5 ft. Beneteau sailboat to the defendant provided the following occurs within 45 days of this judgment:
a. the defendant shall pay to plaintiff's attorney, Charles Irving, the sum of $8,000.00 and refinance said loan and remove plaintiff's name and liability from said note and provide Attorney Irving with proof of same or to deposit with said Attorney Charles Irving sufficient monies for him to pay the Essex Credit Corporation the then balance due on said loan.
b. the plaintiff shall execute the necessary papers to transfer ownership of said sailboat to the defendant and deposit same with her attorney Charles Irving with instructions to deliver such papers to the defendant when he deposits with Attorney Irving the necessary money to pay plaintiff the $8,000.00 and to pay the balance of said note to the Essex Credit Corporation or in lieu of such payment provides said attorney with proof that said note has been refinanced and plaintiff is no longer liable on said note.
11. If the provisions of paragraph 10 subsection a) are not complied with within 45 days, the ownership of said sailboat shall remain with the plaintiff. In such event, the defendant is ordered to deliver possession of said sailboat to the plaintiff within the next 45 days provided all of the following occur:
a. The plaintiff shall deposit with the defendant's attorney Drzislav (Dado) Coric, sufficient sums to pay to the Essex Credit Corporation the balance of its note on said sailboat or to refinance said loan and remove the defendant's name and liability from said note and provide Attorney Coric with proof of same and to pay to the defendant a sum eqital to the monthly payments he paid on said loan minus a sum equal to $500.00 per month times the number of months he lived on said sailboat and/or had it in his possession.
b. The plaintiff and/or her parents, shall have the opportunity to inspect or have said sailboat inspected within 45 days so as to permit them to determine whether to comply with the provisions of this paragraph. CT Page 10377
12. The court shall retain jurisdiction of this matter to further determine the disposition of said sailboat if ownership thereof is not resolved pursuant to paragraphs 10 and 11, supra, and to determine any questions as to the number of loan payments made and the amount of rent chargeable to the defendant.
13. Each party shall pay their own attorney's fees.
Vasington, JTR